**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| EVERGLADES INTERACTIVE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-902-SLR |
| | ) | |
| PLAYDOM, INC.; THE WALT DISNEY COMPANY; PLAYFISH LTD.; PLAYFISH, INC.; ELECTRONIC ARTS, INC.; ZYNGA GAME NETWORK, INC.; ROCKYOU INC.; CROWDSTAR INC.; CROWDSTAR INTERNATIONAL LIMITED; LOLAPPS, INC., | ) ) ) ) ) ) ) ) ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF
<u>MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)</u>**

ASHBY & GEDDES
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
Andrew C. Mayo (I.D. #5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

*Of Counsel:*

Wayne M. Barsky
Sarah E. Piepmeier
Neema Jalali
Alison R. Watkins
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
(415) 393-8200

*Attorneys for Defendants Electronic Arts Inc.,
Playfish Ltd., Playfish, Inc., Lolapps, Inc.,
Zynga Inc., RockYou, Inc., Crowdstar Inc., and
Crowdstar International Limited*

Dated:  February 1, 2011

{00482051;v1}

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS .................................................................................2

        A.     Plaintiff Is Incorporated in California and Located in San
              Francisco. ..................................................................................................3

        B.     Defendants Are Overwhelmingly Centered in the Northern
              District. ......................................................................................................3

        C.     Multiple Third-Party Witnesses and Documents Are Located in
              the Northern District of California, Including Potentially Vital
              Prior Art. ...................................................................................................5

III.    ARGUMENT .....................................................................................................7

        A.     Legal Standards. ........................................................................................7

        B.     Venue Is Proper in the Northern District of California. ............................9

        C.     The Private Interest Factors Overwhelmingly Favor Transfer. ...............10

              1.     The Northern District of California Is More Convenient. ...........10

              2.     The Material Facts Related to Plaintiff's Infringement
                      Claim Arise Within the Boundaries of the Northern
                      District of California. ................................................................12

              3.     The Vast Majority of the Relevant Proof Is Located in
                      the Northern District of California. ............................................12

               4.     Plaintiffs' Choice of Forum Is Not Its "Home" Forum
                      and Should Receive Less Weight in the Transfer
                      Analysis. ....................................................................................13

        D.     The Public Interest Factors Overwhelmingly Favor Transfer. ...............13

              1.     It Will Be Less Expensive and More Efficient to Litigate
                      This Dispute in the Northern District of California. ...................13

               2.     The Northern District of California Has a Stronger
                      Interest in Deciding This Dispute. .............................................14

IV.    CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*ADE Corp. v. KLA-Tencor Corp.*,
    138 F. Supp. 2d 565 (D. Del. 2001).............................................................................. 14

*Affymetrix, Inc. v. Synteni, Inc.*,
    28 F. Supp. 2d 192 (D. Del. 1998).......................................................................... 10, 14

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*,
    295 F. Supp. 2d 393 (D. Del. 2002)........................................................................... 1, 12

*AU Optronics Corp. v. LG. Philips LCD Co.*,
    2007 U.S. Dist. LEXIS 39340 (W.D. Wis. May 30, 2007) ............................................... 9

*Boram Pharm. Co., Ltd. v. Life Techs. Corp.*,
    C.A. No. 10-31-HB, 2010 WL 2802727 (D. Del. July 14, 2010)................. 7, 8, 10, 12, 13

*Brunswick Corp. v. Precor, Inc.*,
    C.A. No. 00-691-GMS, 2000 WL 1876477 (D. Del. Dec. 12, 2000).............................. 12

*Commissariat A L'energie Atomique v. Chi Mei Optoelectronics Corp.*,
    395 F.3d 1315 (Fed. Cir. 2005)..................................................................................... 10

*Illumina, Inc. v. Complete Genomics, Inc.*,
    C.A. No. 10-649-RK, 2010 WL 4818083 (D. Del. Nov. 9, 2010) .................... 1, 6, 11, 12

*In re Acer Am. Corp.*,
    626 F.3d 1252 (Fed. Cir. 2010)........................................................... 8, 9, 10, 11, 13, 15

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)........................................................................ 8, 9, 10, 12

*In re Hoffmann-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009).............................................................................. 8, 9, 12

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009)................................................................... 2, 8, 11, 12, 13

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ..................................................................................... 8, 10

*Inter-City Prods. Corp. v. Ins. Co. of N. Am.*,
    C.A. No. 90-717-SLR, 1993 WL 18948 (D. Del. Jan. 26, 1993) ................................ 7, 13

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995)............................................................................... 7, 8, 11, 13

# TABLE OF AUTHORITIES *(continued)*

Page(s)

*Lony v. E.I. Du Pont de Nemours & Co.*,
886 F.2d 628 (3d Cir. 1989).................................................................. 13

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*,
77 F. Supp. 2d 505 (D. Del. 1999).......................................................... 10, 14

*QinetiQ Ltd. v. Oclaro, Inc.*,
C.A. No. 09-372-JAP, 2009 WL 5173705 (D. Del. Dec. 18, 2009)......... 1, 7, 8, 11, 12, 13

*Rocke v. Canadian Auto. Sport Club*,
660 F.2d 395 (9th Cir. 1981) ................................................................ 10

*Storage Tech. Corp. v. Cisco Sys., Inc.*,
329 F.3d 823 (Fed. Cir. 2003)............................................................... 8

*Van Dusen v. Barrack*,
376 U.S. 612 (1964)............................................................................. 2, 7

## STATUTES

28 U.S.C. § 1391(c) ............................................................................... 9

28 U.S.C. § 1400(b) ............................................................................... 9

28 U.S.C. § 1404(a) ............................................................................... 7

## RULES

D. Del. L.R. 83.5(d) .............................................................................. 14

Fed. R. Civ. P. 45(b)(2)(C) .................................................................... 6

N.D. Cal. Civil L.R. 16-8....................................................................... 14

N.D. Cal. Patent Rules .......................................................................... 14

## OTHER AUTHORITIES

15 Charles Alan Wright et al., Federal Practice and Procedure................... 10

## I.    INTRODUCTION

In this case, a California corporation headquartered in Northern California asserts that seven companies similarly headquartered in Northern California, together with two related non-U.S. entities, are infringing Plaintiff's patent.  Neither the plaintiff, nor any of the defendants, has offices or employees anywhere in Delaware.

In fact, the *only known connection to Delaware* is that multiple defendants are incorporated there, and that the accused games may be accessed on the Internet from Delaware (or any other state). The law is clear, however, that *incorporation in Delaware will not prevent transfer*, and judges in this district have repeatedly transferred cases—just like here—where the moving party was incorporated in Delaware, but it would be significantly more convenient to litigate in a different forum.  *See, e.g.*, *Illumina, Inc. v. Complete Genomics, Inc.*, C.A. No. 10-649-RK, 2010 WL 4818083, at *7 (D. Del. Nov. 9, 2010) ("[W]here an alternative forum is more convenient and has more substantial connection with the litigation, incorporation in Delaware will not prevent transfer.") (quoting *APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 398-99 (D. Del. 2002)); *QinetiQ Ltd. v. Oclaro, Inc.*, C. A No. 09-372-JAP, 2009 WL 5173705 (D. Del. Dec. 18, 2009), at *3-*4.

This result makes sense.  Permitting any connection to Delaware, such as incorporation, to defeat a Section 1404 motion even where the foreign forum was clearly more convenient would eviscerate the "convenience" test that is written into the language of the statute and potentially conflate the test for personal jurisdiction contacts with that of convenience to the parties.  This is because in *every* case where a transfer of venue is sought pursuant to Section 1404(a), *some* connection necessarily exists between the defendants and the forum court.  Here, that connection is that the seven companies headquartered in Northern California are incorporated in Delaware.

Consequently, the Moving Defendants[1] are not challenging either personal jurisdiction or that venue is proper under the Patent Act's nationwide venue statute.

Recent Federal Circuit decisions also support transfer by explaining, for example, that "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, *the trial court should grant a motion to transfer*." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (emphasis added).  This echoes the purpose of § 1404(a), which the United States Supreme Court has explained is to "prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

Here, there can be no question that the case could have been brought in the Northern District of California; litigating in California will be more convenient for the parties; and, other than being the state of incorporation of seven defendants, this case has no meaningful connection to the District of Delaware.  Thus, Moving Defendants respectfully submit that this case should be transferred to the Northern District of California.

## II.    STATEMENT OF FACTS

Plaintiff Everglades Interactive, LLC's ("Plaintiff") complaint ("Complaint") alleges infringement of United States Patent No. 6,656,050 (the "'050 patent") by ten defendants.[2] Plaintiff's dismissal of The Walt Disney Company ("Disney") on December 20, 2010, left nine remaining defendants: Playdom, Inc., Playfish Ltd., Playfish, Inc., Electronic Arts Inc. ("EA"),

---

[1]  While Northern California-based defendant Playdom is not a moving party, it does not oppose transfer.  (Piepmeier Decl. ¶¶ 2-3.)

[2]  Defendants understand that Plaintiff later filed a second action against two other defendants in this district.  One of those defendants, Winster, is based in the Northern District of California, and the other, zSlide, is a non-U.S. defendant.  The locations of the defendants in that case thus mirror the locations of the defendants in this case.

Zynga Inc.,[3] RockYou, Inc., Crowdstar Inc., Crowdstar International Limited ("Crowdstar Ltd."), and Lolapps, Inc. (collectively, "Defendants").  Plaintiff's Complaint specifically accuses certain "social" video games—games that generally may be played on computers or handheld devices and that may involve simultaneous play over networks (such as the Internet) by multiple human users who may interact with one another through the game—as allegedly infringing the '050 patent. (Compl. ¶¶ 18-25.)

### A.    Plaintiff Is Incorporated in California and Located in San Francisco.

While Plaintiff has no apparent connection to the District of Delaware, it does have significant ties to the Northern District of California.  According to the Complaint, Plaintiff is a limited liability company organized under the laws of California and has a principal place of business in San Francisco, California, which is in the Northern District of California.  (Compl. ¶ 1.) In fact, Plaintiff's Complaint alleges no connection between Plaintiff and any judicial district other than the Northern District of California.  (*See generally id.*)

### B.    Defendants Are Overwhelmingly Centered in the Northern District.

Seven defendants physically reside in the Northern District of California, and two others are non-U.S. entities related to two Northern District of California defendants.[4]  As is documented in greater detail in the declarations filed herewith, the Moving Defendants' relevant business operations are overwhelmingly located in the Northern District of California, and on information and belief, relevant operations for defendant Playdom are also located at their headquarters in the Northern District of California.  (Piepmeier Decl. ¶ 2-3; Playdom Answer and Counterclaims, D.I. 39 at Answer ¶ 2, Counterclaims ¶ 1.)  The significant majority of likely witnesses, documents, and

---

[3]  Zynga Inc. was sued as and formerly known as Zynga Game Network Inc.

[4]  Playfish Ltd. and Crowdstar Ltd. are non-U.S. entities related to U.S. entities Playfish, Inc. and Crowdstar Inc., respectively.  (Gajwani Decl. ¶¶ 5-7; Wright Decl. ¶ 5; Bourne Decl. ¶ 5.)

physical evidence for Defendants is, therefore, located in the Northern District of California.
*None* is located in Delaware.

Indeed, as the declarations explain:

- All research, design, development, testing, finance, sales, and marketing by Moving Defendants of the accused games in the U.S. occurs in the Northern District of California. (Bourne Decl. ¶¶ 3, 5, 7, 9; Wright Decl. ¶¶ 3, 5, 7, 9; Gajwani Decl. ¶¶ 10, 12-13; Koenigsberg Decl. ¶ 6; Willoughby Decl. ¶ 6; Sethi Decl. ¶¶ 6, 8.) On information and belief, the same is likely true for defendant Playdom, which is located in the Northern District of California. (Piepmeier Decl. ¶ 3.)

- *Every relevant witness* of U.S. Moving Defendants is located exclusively in the Northern District of California. (Bourne Decl. ¶¶ 3, 5, 7; Gajwani Decl. ¶ 10, 12-13; Koenigsberg Decl. ¶ 6; Willoughby Decl. ¶ 6, 8; Sethi Decl. ¶ 6, 8.) On information and belief, relevant witnesses for defendant Playdom would also be located in the Northern District of California. (Piepmeier Decl. ¶ 3.)

- *Every relevant document* of U.S. Moving Defendants is located exclusively in the Northern District of California. (Bourne Decl. ¶¶ 6, 8; Gajwani Decl. ¶ 11; Koenigsberg Decl. ¶ 7; Willoughby Decl. ¶ 7; Sethi Decl. ¶ 7.) On information and belief, relevant documents for defendant Playdom would also be located in the Northern District of California. (Piepmeier Decl. ¶ 3.)

- The two non-U.S. defendants, Crowdstar Ltd. and Playfish Ltd., work closely with their related U.S. entities, Crowdstar Inc. and Playfish, Inc., respectively. Due to their connection to their Northern California-based U.S. related entities, it will be more convenient for them to litigate in the Northern District of California than the District of Delaware. (Gajwani Decl. ¶¶ 5-7; Wright Decl. ¶ 5; Bourne Decl. ¶ 5.) Also, Crowdstar Ltd. and Playfish Ltd. consent to jurisdiction in the Northern District of California. (Gajwani Decl. ¶ 15; Wright Decl. ¶ 11.)

- Some defendants have no employees, offices, or presence in the U.S. outside of the Northern District of California.  (Bourne Decl. ¶ 3, 10; Sethi Decl. ¶ 8; Wright Decl. ¶ 3, 10.)

- No Moving Defendant keeps documents or physical evidence in Delaware, has identified any likely witnesses who reside or work in Delaware, or has an office or other physical presence in Delaware.  In short, other than being the state of incorporation for the seven U.S.-incorporated defendants, *no Moving Defendant* has any relevant connection to the District of Delaware.  (Bourne Decl. ¶ 9-10; Gajwani Decl. ¶ 14; Koenigsberg Decl. ¶ 8; Willoughby Decl. ¶ 9; Wright Decl. ¶ 9-10; Sethi Decl. ¶ 9.)  On information and belief, defendant Playdom has no business facilities, documents, physical evidence, or likely witnesses in Delaware.  (Piepmeier Decl. ¶ 2-3; Playdom Answer and Counterclaims, D.I. 39 at Answer ¶ 2, Counterclaims ¶ 1.)

Accordingly, there can be question that the Northern District of California—and not Delaware—is the center of this suit:  Plaintiff is located in the Northern District of California, the relevant witnesses and documents are located exclusively in the Northern District of California (or in some limited circumstances, in the United Kingdom or Ireland), and the only connection Defendants have to Delaware is as their state of incorporation.

### C.  Multiple Third-Party Witnesses and Documents Are Located in the Northern District of California, Including Potentially Vital Prior Art.

Because the Northern District of California is a national hub for development of online, multiplayer computer games, numerous sources of prior art systems are likely to be located in California, including the Northern District.  According to the Complaint, the '050 patent relates to, among other things, providing and allowing for the sharing, trading, and storage of game pieces in a multiplayer game environment.  (Compl. ¶¶ 18-25.)  This case is in its earliest stages, but Moving Defendants have already found prior art systems located in California that they expect to assert as invalidating the claims of the '050 patent.  In particular, Moving Defendants believe that certain multiplayer games that allowed users to interact and to collect, store, and trade items more than one

year before the earliest application to which the '050 patent claims priority was filed, may render the claims of the '050 patent invalid.

Moving Defendants believe these invalidating prior art games include, among others, the "Diablo," "StarCraft," and "Warcraft" series of games developed and provided by Blizzard Entertainment ("Blizzard"). (Piepmeier Decl. ¶ 5.) Blizzard is headquartered in *Irvine, California*, which will likely be the location of relevant documents and witnesses who can testify regarding the scope and functionality of its prior art products. (*Id.*)

Moving Defendants further believe these invalidating prior art games include the "EverQuest" series of games developed and provided by Sony Online Entertainment and its predecessors ("SOE"). (Piepmeier Decl. ¶ 6.) SOE is headquartered in *San Diego, California*, which will likely be the location of relevant documents and witnesses who can testify regarding the scope and functionality of its prior art products. (*Id.*)

Relevant third parties are not just limited to prior art witnesses. Indeed, several third parties involved in the management and promotion of Crowdstar's Zoo Paradise game are located in the Northern District of California, but none is in Delaware. (Bourne Decl. ¶ 9; Wright Decl. ¶ 9.) In particular, Crowdstar Ltd.'s accused game is hosted on the Internet by third parties CDNetworks Inc., in San Jose, California; RestEngine, in San Francisco, California; and Zendesk Inc., in San Francisco, California, all of which are within the Northern District. (Wright Decl. ¶ 9.) None is in Delaware. (*Id.*)

These third-party witnesses are not subject to this Court's subpoena power, but could be compelled to testify at trial in the Northern District of California. *See* Fed. R. Civ. P. 45(b)(2)(C); *see also Illumina*, 2010 WL 4818083, at *4 n.4. It also will undoubtedly be more convenient for

such third party witnesses to testify in the Northern District of California than in Delaware.[5]

## III.   ARGUMENT

### A.   Legal Standards.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen*, 376 U.S. at 616.  Further, a plaintiff's choice of venue is subject to less weight where, as here, there is no connection between the plaintiff and its chosen venue.  *See QinetiQ*, 2009 WL 5173705, at *3-*4; *Boram Pharm. Co., Ltd. v. Life Techs. Corp.*, C.A. No. 10-31-HB, 2010 WL 2802727, at *1 (D. Del. July 14, 2010); *Inter-City Prods. Corp. v. Ins. Co. of N. Am.*, C.A. No. 90-717-SLR, 1993 WL 18948, at *1 (D. Del. Jan. 26, 1993); *Illumina*, 2010 WL 4818083, at *7.

The threshold inquiry is whether venue is proper in the district to which defendant seeks to transfer the action.  *QinetiQ*, 2009 WL 5173705, at *2.  A court next weighs the "private" and "public" interest factors.  *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).  The private interest factors include:  "(1) plaintiff's forum preference; (2) defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of witnesses to the extent that they may be unavailable for trial in one of the fora; and (6) the location of sources of proof such as books and records to the extent that the records could not be produced in the alternative forum."  *QinetiQ*, 2009 WL 5173705, at *3 (citing *Jumara*, 55 F.3d at 879).  The public interest factors include:  (1) the enforceability of the judgment; (2)

---

[5]  The face of the '050 patent indicates that the two named inventors of the '050 patent are (or were) located in Florida, which is not within the subpoena power of either this Court or the Northern District of California.  To the extent that either agrees to testify at trial, he will have to travel to either Delaware or Northern California.  Their location thus does not materially affect the transfer analysis.

practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative

administrative difficulty in the two fora resulting from court congestion; (4) the local interest in

deciding local disputes at home; (5) the public policies of the fora; and (6) the familiarity of the

trial judge with the applicable state law in diversity cases.  *Id.* (citing *Jumara*, 55 F.3d at 879-80).

Those factors were recently weighed in *QinetiQ*, a case in this district presenting facts

materially indistinguishable from those in this case, and the court concluded that transfer from

Delaware to the Northern District of California was warranted because the dispute's only

connection to Delaware was that it was the defendant's state of incorporation, and the convenience

of the parties and witnesses would best be served by transfer.  *QinetiQ*, 2009 WL 5173705, at *3-

*4; *see also Boram*, 2010 WL 2802727, at *2 (granting transfer to the Southern District of

California, where "the key research, testing, development, marketing, sales, and manufacture of the

Accused Product have taken place [and] where the books and records are located," despite the

defendant's incorporation in Delaware).

This result is echoed by recent Federal Circuit decisions.  Over the past three years, the

Federal Circuit has granted several petitions for writs of mandamus directing the United States

District Court for the Eastern District of Texas to transfer cases to other districts.  *See generally,*

*e.g.*, *Nintendo*, 589 F.3d 1194; *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009); *In re*

*Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009); *In re Acer Am. Corp.*, 626 F.3d 1252 (Fed. Cir.

2010).  In those cases, the Federal Circuit emphasized several transfer analysis factors used by the

Fifth Circuit that are similar to the *Jumara* factors used by the Third Circuit.[6]  *See, e.g.*, *Nintendo*,

589 F.3d at 1198 (holding "that in a case featuring most witnesses and evidence closer to the

---

6 Because venue transfer motions do not involve substantive issues of patent law, the Federal
Circuit applies the law of the regional circuit in which the district court sits.  *Storage Tech.*
*Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003).  The Fifth Circuit factors for
venue transfer analysis are substantially similar to those used in the Third Circuit.  *Compare In*
*re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008), *with Jumara*, 55 F.3d at 879.

transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer"); *Hoffmann-La Roche*, 587 F.3d at 1338 (holding that "if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor"); *Genentech*, 566 F.3d at 1343-44 (recognizing that the convenience of the witnesses and their cost of attendance is probably the single most important factor in transfer analysis); *Acer*, 626 F.3d at 1255 ("[T]he combination of multiple parties being headquartered in or near the transferee venue and no party or witness in the plaintiff's chosen forum is an important consideration.").

### B.       Venue Is Proper in the Northern District of California.

This threshold test is easily met.  A court where the action "might have been brought" is one "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  Under 35 U.S.C. § 271, "acts of infringement" include making, using, offering for sale, or selling a patented invention within the United States.  The corporation "resides" in the judicial district in which it is subject to personal jurisdiction if that judicial district were considered to be a state.  *See* 28 U.S.C. § 1391(c).

Here, the principal places of business of Playdom, Inc., Playfish, Inc., EA, Zynga Inc., RockYou, Inc., Crowdstar Inc., and Lolapps, Inc. are located within the Northern District of California.  (*See* Section II.B, *supra*.)  These defendants have facilities and perform research, design, development, and testing with respect to the accused games in the Northern District of California.  (*See id.*)  The other three original defendants in this action—Disney,[7] Playfish Ltd., and Crowdstar Ltd.—are related entities of Playdom, Inc., Playfish, Inc., and Crowdstar Inc.,

---

[7] Because Disney has been dismissed from this action, it is irrelevant whether this suit could have been brought against Disney in the Northern District of California. *AU Optronics Corp. v. LG. Philips LCD Co.*, 2007 U.S. Dist. LEXIS 39340, at *8 (W.D. Wis. May 30, 2007).  Regardless, as discussed, this suit could have been brought against Disney in the Northern District of California.

respectively, and they consent to jurisdiction for purposes of this case.  (*See id.*[8])  Accordingly,

Plaintiff could have brought this action in the Northern District of California.

        **C.**      **The Private Interest Factors Overwhelmingly Favor Transfer.**

          **1.**      **The Northern District of California Is More Convenient.**

      An "important factor, and the factor most frequently mentioned, in passing on a motion to

transfer . . . is the convenience of the witnesses."  15 Charles Alan Wright et al., Federal Practice

and Procedure; *see also Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505,

510 (D. Del. 1999); *Boram*, 2010 WL 2802727, at \*2 ("The critical factors in this case are the

convenience of the parties and the witnesses."); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192,

203 (D. Del. 1998) (noting that "witnesses who possess first-hand knowledge of the events giving

rise to the lawsuit . . . have traditionally weighed quite heavily in the 'balance of convenience'

analysis").  Recent Federal Circuit decisions have focused on this factor as one of the most

important in the transfer analysis.  *See, e.g.*, *Genentech*, 566 F.3d at 1343-44; *Acer*, 626 F.3d at

1255.  "Additional distance . . . means additional travel time; additional travel time increases the

probability for meal and lodging expenses; and additional travel time with overnight stays increases

the time which these fact witnesses must stay away from their regular employment."  *Id.* at 1343

(quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008) (en banc)); *accord Acer*,

626 F.3d at 1255.

      As set forth in Section II.B, *supra*, the overwhelming majority of all documents, witnesses,

and information relating to Moving Defendants' accused games is located in the Northern District

---

[8]  "[T]o establish personal jurisdiction in a patent infringement case over a non-resident
defendant . . . a plaintiff must show both that the state long arm statute applies and that the
requirements of due process are satisfied."  *Commissariat A L'energie Atomique v. Chi Mei
Optoelectronics Corp.*, 395 F.3d 1315, 1319 (Fed. Cir. 2005).  The two inquiries merge under
California's long-arm statute. *Rocke v. Canadian Auto. Sport Club*, 660 F.2d 395, 398 (9th Cir.
1981).

of California.[9]  Any additional relevant witnesses or information are located outside the United States.  (*See id.*)  Further, no defendants have any offices, employees, or corporate witnesses located in the State of Delaware.  (*See id.*)  Plaintiff's own witnesses will also benefit from a transfer, as well:  Plaintiff is incorporated in California; its principal place of business is in San Francisco; and it appears to have no offices, employees, or witnesses located in Delaware.  (Section II.A, *supra*.)

Further, Moving Defendants have identified many non-party witnesses residing outside the subpoena power of the District of Delaware, but within the subpoena power of the Northern District of California.  (Section II.C, *supra*.)  It would be much more convenient for these non-party witnesses to appear in the Northern District of California than in Delaware, and importantly their attendance could be compelled at trial in California, but not in Delaware.  *See Acer*, 626 F.3d at 1255 ("[T]he subpoena powers of the Northern District of California may be expected to be invaluable, in the event process is required to hale relevant witnesses into court."); *Jumara*, 55 F.3d at 879.  By contrast, no party has identified a single, relevant third-party witness in Delaware.  The Federal Circuit has held "that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."  *Nintendo*, 589 F.3d at 1198.  Because the Northern District of California is significantly more convenient for Defendants' witnesses, non-party witnesses, and Plaintiff's corporate witnesses, this pivotal factor weighs heavily in favor of transfer.

Notably, that the U.S. defendants are incorporated in Delaware cannot itself override the parties' significant connections to the Northern District of California.  As explained in *Illumina*, "where an alternative forum is more convenient and has more substantial connection with the

---

9  On information and belief, the same is likely true for Playdom.  (Piepmeier Decl. ¶ 3; Playdom Answer and Counterclaims, D.I. 39 at Answer ¶ 2, Counterclaims ¶ 1.)

litigation, *incorporation in Delaware will not prevent transfer*." *Illumina*, 2010 WL 4818083, at *7

(citing *APV*, 295 F. Supp. 2d at 398-99) (emphasis added); *see also QinetiQ*, 2009 WL 5173705, at

*3-*4; *Boram*, 2010 WL 2802727, at *1 ("Nor is the fact that defendant is a Delaware corporation

of great moment under the circumstances."); *Brunswick Corp. v. Precor, Inc.*, C.A. No. 00-691-

GMS, 2000 WL 1876477 (D. Del. Dec. 12, 2000).  Accordingly, weighing the convenience factors

strongly favors transfer.

**2.      The Material Facts Related to Plaintiff's Infringement Claim Arise
Within the Boundaries of the Northern District of California.**

"[I]f there are significant connections between a particular venue and the events that gave

rise to a suit, this factor should be weighed in that venue's favor."  *Hoffmann-La Roche*, 587 F.3d at

1338.  The vast majority of the facilities and operating activities—including research, design,

development, testing, finance, marketing, and sales—related to the accused products and Plaintiff's

allegations of infringement are conducted in and directed from the Northern District of California.

(Section II.B, *supra*.)  In fact, other than that the accused games may be accessed from anywhere in

the United States, these allegedly infringing acts do not take place anywhere in the United States

outside of the Northern District of California.  Because Delaware is not connected to any of these

allegedly infringing acts, this factor also counsels heavily in favor of transfer.  *See QinetiQ*, 2009

WL 5173705, at *3.

**3.      The Vast Majority of the Relevant Proof Is Located in the Northern
District of California.**

"[I]n patent infringement cases, the bulk of the relevant evidence usually comes from the

accused infringer.  Consequently, the place where the defendant's documents are kept weighs in

favor of transfer to that location."  *Nintendo*, 589 F.3d at 1199 (quoting *Genentech*, 566 F.3d at

1345).  No party has identified any relevant documentation in the District of Delaware.  Other than

the related entity defendants located overseas, all of Defendants' documentation and operations

relevant to this case are accessible in the Northern District of California.  (Section II.B, *supra*.)

{00482051;v1}

- 12 -

Defendants have also identified five relevant third-party entities in California.  (Section II.C, *supra*.)  This factor thus weighs heavily in favor of transfer.  *See Nintendo*, 589 F.3d at 1199-1200 (granting mandamus in favor of transfer in part because district court erred by not "weighing [] heavily" the location of sources of proof); *Acer*, 626 F.3d at 1256.

### 4.    Plaintiffs' Choice of Forum Is Not Its "Home" Forum and Should Receive Less Weight in the Transfer Analysis.

Plaintiff is incorporated in California, has its principal place of business in the Northern District of California, and alleges no connection to Delaware.  So while a presumption in favor of a plaintiff's choice of forum may sometimes weigh against transfer (*Jumara*, 55 F.3d at 879), a plaintiff's choice of forum is afforded less weight when, as is the case here, the plaintiff has chosen to bring suit in a district that is not the plaintiff's "home," is not near the plaintiff's principal place of business, and has no connection to any acts giving rise to the lawsuit.  *See QinetiQ*, 2009 WL 5173705, at *3 (citing *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 634 (3d Cir. 1989)); *Boram*, 2010 WL 2802727, at *1; *Inter-City*, 1993 WL 18948, at *1.

## D.    The Public Interest Factors Overwhelmingly Favor Transfer.[10]

### 1.    It Will Be Less Expensive and More Efficient to Litigate This Dispute in the Northern District of California.

The Northern District of California is the least expensive forum for litigating this action because, as noted above, the vast majority of evidence and witnesses are located there.  It would be far less expensive, and far more efficient, to coordinate testimony of witnesses who reside only a short commute from most of the courtrooms in the Northern District of California than it would be to coordinate travel to and lodging for those witnesses in Delaware.

---

[10]  Certain *Jumara* public interest factors, such as the enforceability of the judgment, the trial judge's familiarity with applicable state law, and the public policies of the districts, are either irrelevant to this action or are materially neutral to the analysis and are therefore not addressed in this brief in the interest of brevity.

Further, the implementation of "special local rules for patent infringement cases," the existence of an "established procedure for exploring settlement," and "a relatively well developed and predictable body of case law on how [patent] cases are tried" may reduce the relative cost of litigation in one jurisdiction versus another. *See ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 572 (D. Del. 2001). The Northern District of California has implemented specialized Patent Local Rules designed for efficient adjudication of patent infringement disputes and requires that parties consider alternative dispute resolution early in litigation. *See* N.D. Cal. Patent Rules; N.D. Cal. Civil L.R. 16-8. In addition, the Northern District of California currently has 29 judges spread between San Francisco, San Jose, Oakland, and Eureka, providing a favorable ratio of available judges to cases filed. (Piepmeier Decl. ¶ 4, Ex. B.)

Further, Defendants are represented by counsel located in California. To litigate in Delaware, Defendants are forced to incur significant travel costs for their company witnesses, lost productivity while those witnesses attend trial activities, and local counsel fees for retaining Delaware counsel. *See* D. Del. L.R. 83.5(d); *Mentor*, 77 F. Supp. 2d at 510 n.7 (noting the parties' savings on travel and local counsel expenses in determining that the Northern District of California was more convenient); *see also Affymetrix*, 28 F. Supp. 2d at 205-06 (considering the elimination of local counsel expenses from transfer to the Northern District of California). Similarly, Plaintiff will also save travel expenses and time by litigating in the Northern District of California, and its California counsel will not have to retain local co-counsel or take cross-country flights to reach the court. Thus, because it would be more efficient and less expensive to litigate this dispute in the Northern District of California, this factor weighs in favor of transfer.

### 2. The Northern District of California Has a Stronger Interest in Deciding This Dispute.

The Northern District of California has a strong interest in deciding disputes that arise within its boundaries. As explained above and in the accompanying declarations, Defendants have

deep and primary connections to the Northern District of California.  On balance, the facts demonstrate that the Northern District of California has far superior interests in deciding this dispute when compared to Delaware.  This dispute will require the testimony of numerous California residents, but no known Delaware residents.  The Northern District of California also has an interest in overseeing the acts of alleged infringement that occur based on the products developed within its borders, where the vast majority of the resident-employees, physical assets, operative facts, and potential witnesses are located.  Accordingly, this factor weighs in favor of transfer.  *See Acer*, 626 F.3d at 1256.

## IV.   CONCLUSION

The *only* apparent connection between this dispute and the District of Delaware is seven of the defendants' incorporation in Delaware.  The overwhelming majority of witnesses and evidence are in the Northern District of California.  Moving Defendants thus respectfully request that the Court grant their motion to transfer this case to the Northern District of California.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

_____
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
Andrew C. Mayo (I.D. #5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Defendants Electronic Arts Inc.,*
*Playfish Ltd., Playfish, Inc., Lolapps, Inc.,*
*Zynga Inc., RockYou, Inc., Crowdstar Inc., and*
*Crowdstar International Limited*

*Of Counsel:*

GIBSON, DUNN & CRUTCHER LLP
Wayne M. Barsky
Sarah E. Piepmeier
Neema Jalali
Alison R. Watkins
555 Mission Street, Suite 3000
San Francisco, CA 94105
(415) 393-8200

Dated:  February 1, 2011